The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. We're prepared to hear argument in our first case, Gallmon v. Cooper and Mr. Morrison. Are you ready? Thank you. May it please the Court. I am honored and privileged to be here today representing Officer Robert Cooper in this matter, and this is an appeal from the denial of qualified immunity in a police shooting case. The question in this case is whether a reasonable officer, under the specific circumstances presented in this case, viewing from an objective standard here today, whether a reasonable officer could have believed that he was in harm's way. And that's what I want to talk with you about here today. Reasonableness in this situation has to be judged from the perspective of the officer, because it's his conduct that's being judged. So we have to analyze what was known to Officer Cooper, and we have to analyze what happened that day. There's no dispute here about what happened on this occasion. We have the video, we have the magistrate judge's report and facts in the light most favorable to the plaintiff. And that's the two things that the lower court considered, was the facts, was the report and recommendation, and the facts set out by the report and recommendation, and the video itself. So there's no question about what happened. The question here in this appeal is the application of law to what happened. Well, we've all watched the video multiple times. So if you get to the point where you're past the first two, maybe the first three shots, and the victim's car is now beside the police officer's car, and he's over to the side, so he's away from the vehicle. Even if you credit the first couple of shots as placing the officer in harm's way, once that's done for the remainder of the shots, why isn't that a factual question for the jury? The issue in the case is not whether the officer is in harm's way. The issue is whether a reasonable officer would have believed that he is in harm's way from an objective standard for purposes of qualified immunity. So the question of whether he was in fact in harm's way isn't dispositive of the issue of qualified immunity. I don't think the way you reframed that changes Judge Agee's question. Still, why isn't that a question for the jury, whether the reasonable officer would have felt that he was in harm's way? Because you can't parse this out in that manner. What we have here is different from what you had in Waterman. With Waterman, you had a series of shots, a very short series of shots, one shot fired by two officers, two shots fired by one officer, as the car was approaching. And then the car passed, went beyond, and stopped. And as the officer scrambled after... In Waterman, there was also a lot more activity that would have heightened the danger, at least in the officer's mind, before the shots were fired. That's correct. The point I was trying to make in Waterman here is that Waterman parsed the facts and said you could consider them as two separate events, because there was a delineation between the shots as the vehicle was approaching, and the subsequent shots after the vehicle had passed the officers that had stopped. In Waterman, rather than considering the totality of the circumstances, as has always been taught, the approach of these cases, Waterman said you could separate that into two separate events. In this case, we have one volley of shots as the car is approaching. I assume we can take the video as a given. And so when you watch it, the circumstance for the first shot is very different from the last several shots. Is it your position that the circumstances between the first shot and the last shot do not change? It's my position that the officer fired a volley of shots. We all know that. And you can't separate that volley of shots into different events. This was three shots. Why not? This was seven shots fired in three seconds. Waterman, there was a break in those shots between the first shots as the car was approaching and the second shots after the car had passed and stopped. It wasn't a volley of shots. It was shots here and then shots here. There was clear delineation. In addition to the first couple of shots, the car is coming right at the officer. And if he had stopped there, you win. But he didn't stop there. And there were more shots after that and the circumstances changed because the victim is now not coming at the officer. He's over on the side. And I don't think there's any evidence in this case that the victim was armed or made any type of threatening gestures with some other weapon. There's nothing about contraband or other individuals in the vehicle. It's just the officer and the victim. So tell us why the beginning of the volley and the end of the volley are not two different events. In this court, in Brockington v. Boykins, the 2011 case, after Waterman, analyzed whether you can separate it and segment it like that into different events rather than one volley of shots, particularly in the case where there is one volley of shots. In the Brockington case, this court said, and it looked at Waterman, and it looked at the totality of the circumstances test. And it said in Waterman there was a clear delineation between the shots. And so it would be appropriate when there was a clear delineation and a break between shots to analyze them separately. But there is a delineation in terms of where the vehicle was and where the officer was when the shots, as the shots were occurring. You're even, the officer turned to fire, you can see it in the video, turned to fire at the car as it went past him, just the way you're showing us now. So why isn't there a delineation between, okay, I'm shooting at this car when it may be coming at me, and now I'm going to turn around and shoot it as it goes away? Because it was one volley of shots fired. Is this a machine gun? No, but it was seven shots fired in three seconds. So there's less than a half a second between each shot. There's a clear threat at the beginning of that volley of shots. I don't, assuming that's true. Certainly there's, even the district court said that the first shots were arguably constitutional. Right. I'm not re-weighing the district court's facts there. So there's a clear threat at the beginning of this volley of shots. And once an officer shoots at a threat, he's entitled to keep shooting at the threat. Even after the threat passes? Even after the threat passes? What case law says that he's entitled to keep shooting after the threat has passed, after a reasonable officer would have thought that the threat had passed? In Waterman, the threat had passed, and the threat was beyond and stopped. Here, the threat is approaching and passing, not passed. It is there in very close proximity. That's the whole question. But that's a question of law. Whether an officer can believe this. I'm sorry. We have a whole lot of cases indicating where the district court has identified a bona fide factual dispute that we just don't have jurisdiction on an interlocutory appeal. We should just send the case back. I don't know that we can award qualified immunity on three shots and not award it on the others. It seems to me we have to deal, as we've done in this case, with the cases as a whole. And the district court here identified, he looked at it very carefully, and he identified a factual issue on which the case turned. Not a legal question. We can accept jurisdiction if the facts aren't genuinely in dispute. And if it's simply a question of law to undisputed facts. But here, it seems to me that there are disputed facts involving the path of the car and the danger to the officer and a whole lot of other things that the district court identified. That a jury can take a look at from the standpoint of reasonableness. But the case seems to me to be factual rather than legal. But it's our position there is no dispute as to what the facts are. The dispute here is applying the law to those facts. The car is passing. There is a dispute. And the dispute is simply this. Was the officer in danger with respect to the shots that were fired and ultimately injurious? That's a factual dispute. He was in danger or he wasn't. That's not a great question of law. I disagree. I think if the facts are clear, as they are here from the video, if the facts are clear, whether a reasonable officer could have believed he was in danger is a pure question of law. That's applying the law to those facts. There's not a dispute about what happened. The dispute about is the result when you apply the law to what happened. No, the factual question is was the car coming at him or had it veered significantly and definitively to one side? That's a factual question. Could a reasonable officer see that the car was coming at him or had it veered to the side? That's factual. Well, here from the video, we know the car was coming at him at the beginning and then it veered and was going by him by the side during the last shots. We know that. That's clear on the video. The car is going by him when the last couple of shots were fired. Those shots were fired from the side through the side door in very close proximity to the vehicle. That is the fact. So when, in your view, does the vehicle go past the police car in the opposite direction, at what point would it have been objectively unreasonable for him to have fired a shot? I don't believe it was objectively unreasonable at any point during the sequence. I know that. Here goes the car. At what point as it goes down the road away from the officer would it have become objectively unreasonable to fire? We know from the teachings of Waterman that when the car passed by the officers, it stopped and the officers scrambled after it from behind and beside, that that was objectively unreasonable when there had been a break in the sequence of the firings. Let's say the car is 50 feet past the officer. Can he keep firing then? If the car is 50 feet past the officer, I don't want to get into speculation, but I think Waterman would likely teach in that circumstance that once the car is 50 feet past the officer that the shots would not be justified. I believe it would be the teachings. But Rockington, going back to Rockington, in this court, Rockington said when the shots are fired in rapid succession in one series without a break, that you can't parse them out. What about Williams, our 2019 case that says whether officers started or continued to open fire on a restee after they were no longer in the trajectory of the car was a material fact issue precluding summary judgment in favor of the officer. Isn't that what we have here? If there's a delineation between the facts, that could certainly be the case. But here we have one volley fired in three seconds. When the volley began, the car was coming toward him. It says whether the officer started or continued to open fire. That sounds like one volley or continued. I don't believe that case involved one volley or continued. The other cases other than Rockington. On that case, so I guess I'll just review it again. Other than Rockington, the other case law of which I'm aware does involve situations where you have delineation. Rockington did not. And there's been a case out of North Carolina since then where there was a series of shots fired at a suspect. I believe it was 12 shots or so in 10 seconds. The suspect was hit, turned, and was shot several more times as he was falling to the ground. And he argued in that case that the circumstances changed when he turned  You have a classic jury question. I mean, this is a grist for the jury mill. And the question is simply this. You put it to them, had the danger passed or was the danger still present? And the jury decides that. But that's classic jury material. That's a conclusion based on the facts as we know them to be. That's not saying what happened. But we're applying the law of qualified immunity to that fact. We're applying the law of qualified immunity to the fact that the car was in front and them beside. And under the law of qualified immunity, there's no case in this circuit that talks about a car that is passing. The cases talk about cars that are approaching and cars that are passed. No, because whether the danger is passed or whether it's present depends on how you interpret the video and how you interpret the facts. And that, it's intensely factual. I mean, we're not, we just can't be a jury up here. I'm not asking you to be a jury. I'm asking you to apply the law of qualified immunity to the fact that the car was approaching and then passing in close proximity. But that assumes the conclusion. I mean, your conclusion, you assume the whole case in your favor. No, whether the danger, whether he was actually in danger or not is not the question. The question is whether a reasonable officer could have believed he was in danger. And in this case, if you apply the law to the facts as we know them to be, there's no dispute the car was approaching and then was passing. If you apply the law to those facts, knowing there's a single volley of shots fired at the threat under Brockington, you can't parse it out and separate one shot from another to analyze it. In the field, an officer could... Sir, your red light is on. I'm sorry. Can you reserve some of this for rebuttal? You have some rebuttal time. Certainly. Thank you. Mr. Holmes, let's hear your side of it. Excuse me. May it please the court, I'm Gray Holmes. I'm here on behalf of the appellee plaintiff, Antoine Goldman, and this interlocutory appeal did a denial of Officer Cooper's motion for summary judgment. We respectfully submit to this court that this court does not have jurisdiction over this appeal because the district court's order turned on an issue of fact and Officer Cooper's conduct violated clearly established law. Further, we believe under the objective reasonable standard that Officer Cooper violated Goldman's Fourth Amendment right to be freed from seizure by excessive force. As to the jurisdictional issue, as you all seem to have latched onto, this court only has jurisdiction over an interlocutory appeal to the extent that the denial of the motion to dismiss asserting qualified immunity extended purely to an issue of law rather than a question of fact. The district court's order in this case clearly states there's an issue of fact as to Officer Cooper's use of force as the plaintiff's vehicle passed and whether the threat of his safety had passed at that time. Essentially, the district court found an issue of fact existed as to whether Goldman posed an imminent threat of harm to Officer Cooper when Officer Cooper shot the, I believe he parsed it out, one shot versus the six additional shots through the side door and side window. Your Honor? If we agree with you, then we would simply dismiss the appeal for lack of jurisdiction. Yes, Your Honor. I believe that the appeal should be dismissed for lack of jurisdiction because the issue of fact, not only is there an issue of fact, but also that issue of fact is material to the resolution of the case because under Waterman and under Tennessee v. Garner, essentially what that finding decides is whether or not the officer was in an imminent threat of danger, which is the only circumstance under which he could shoot or seize Mr. Goldman by shooting as Mr. Goldman had not committed any sort of violent act prior to this incident. The law was clearly established. There could be instances where the danger was so apparent. If all we had were the first three shots, might the danger have been so apparent in that case that we would have before us a legal question rather than a factual question? In other words, it has to be a genuine issue of material fact. And there could be, I mean, all cases have facts. The thing that seems to me to surprise us of jurisdiction is that the facts here are open to legitimate interpretation in one of two ways, which makes it a classic jury question. You have a tribal issue there. But I can conceive of things where the situations where the danger was so apparent and the like that we could resolve it on an interlocutory appeal. That's not this case. Yes, Your Honor, I agree with that. I do not believe any of the shots were constitutional in this case. There was not a reason to appeal or to argue the first shots because the district court didn't make a final finding as to whether or not those shots were constitutional. I think the whole case ought to go to the jury from beginning to end, from the first shot to the last shot, because all of it's important in setting the context and in setting the scene. But the point is, historically, we've just dealt with these cases by saying, we don't have jurisdiction over it. It's a jury question. And this case presents not a clear question on which summary judgment could be given or it doesn't present a clear question on which the officer's behavior was plainly justified under the facts. It presents a gray zone where reasonable people can disagree. And when you get into that zone of reasonableness, you're talking about something that really ought to go to a jury. Correct, Your Honor. And there are many issues of fact. Actually, there's issues of fact that Officer Cooper raised in his own brief in support of his appeal. I mean, he says that Gallman intentionally drove his vehicle at Cooper. He said he missed him by inches. I don't think the video shows that. The video, obviously, they've talked about the Scott case and that you look only at the video. In this case, you can't see the officer's feet. I mean, you only see him from around his buttocks down. You can't really judge distances from that point of view. I mean, we've all seen. He could testify to that. He could testify to that. It requires a jury to make that determination. And then Gallman can testify, no, as he has, no. He was never within the path of the vehicle. I had turned to the right. I had turned as far away as I could for him. I was trying to avoid him. And, Your Honor, other issues of fact were that he said that Gallman was driving aggressively, that his life was in danger. He claims that his lights were activated and that he had identified himself as an officer. Gallman disputes that. I think the video actually disputes that because you can't see his lights in the video. What's all going to come out before the trial are found? That's correct, Your Honor. Do you have anything that our questions haven't touched upon that you'd like to add? Well, Your Honor, the only issues that I had were just that the law was clearly established. He seems to want to parse out, and he wants to get credit for the fact that the officer began shooting and never looked back. He says, well, if he shot the first time, and that one was okay, he's okay with these last shots because he never stopped. We understand that. We're all familiar with the Waterman case and the whole concept that a danger at the beginning need not necessarily be a danger for all time. Can I ask my colleagues if they have some questions? Sure. Yes, Your Honor. We have no questions. Thank you. Thank you, Your Honor. Mr. Morrison. You mentioned that, well, let me start with this. The law of qualified immunity protects all but the plainly incompetent. It only does not apply if the issue is beyond debate. If it's a close call, if it's a gray area, if it's a hazy area, then qualified immunity applies. And what I'm hearing from this court is that the question of whether he was in fact in danger when he fired the last shots is important to this court. But I believe whether he was actually in danger or not is not the issue. The question is whether a reasonable officer could have believed he was in danger. And at best, that's a hazy area. It's a gray area. It's not clearly established that he was not. And with those circumstances, it's not clearly established that he was not so long as the officer wasn't plainly incompetent, so long as it's not beyond debate, then he's entitled to qualified immunity. Thank you. We thank you, and we will come down and recounsel and move directly into our next case.
judges: J. Harvie Wilkinson III, G. Steven Agee, Stephanie D. Thacker